**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TAYLOR PETTIT, individually and as administrator of the ESTATE OF KENNETH PETTIT,<br><br>*Petitioners,*<br><br>v.<br><br>CHESTER COUNTY, et al.,<br><br>*Respondents.* | CIVIL ACTION<br>NO. 23-3884 |

**Pappert, J.**                                                                                     February 24, 2026
<u>**MEMORANDUM**</u>

Taylor Pettit, as the administrator of her father's estate, filed a petition to approve and distribute a settlement resolving this wrongful death and survival action. The petition is unopposed, and the Court approves the proposed settlement and its allocation and distribution.

I

On October 6, 2021, Kenneth Pettit hung himself while detained at Chester County Prison. (Pet. ¶ 6, Dkt. No. 66.) Taylor Pettit hired Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. on a contingency fee of 40 percent. (*Id.* ¶ 18.) She then sued Chester County, Correctional Officers Pate, Roberts, and Rost, Lieutenant Kenneth Boyd, PrimeCare Medical, Inc., Medical Assistant Mabel Moiyallah, and Nurse Kimberly McGee, alleging they were deliberately indifferent to Mr. Pettit's particular vulnerability to suicide. (*Id.* ¶ 7); (Compl. at 1–2, Dkt. No. 1.) She also brought a *Monell* claim against Chester County and PrimeCare, a medical negligence

1

claim against PrimeCare, Moiyallah and McGee, and wrongful death and survival claims against all defendants. (Pet. ¶ 7)

The parties reached an agreement last month to resolve the claims. (*Id.* ¶ 12.) Ms. Pettit filed stipulations to dismiss all claims against the Chester County Defendants, Moiyallah, and McGee with prejudice. (*Id.*); (Stip. of Vol. Dismissal of Chester Cnty. Defs., Dkt. No. 61); (Stip. of Dismissal of Individual Medical Defs., Dkt. No. 62.) She also signed a Full and Final Release with PrimeCare in exchange for a gross settlement of $700,000.00 with the following distribution:

- $67,374.66 to Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck P.C. for reimbursement of costs;

- $280,000.00 (40 percent of the gross settlement) to Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck P.C. for legal fees;

- $264,469.00 (75 percent of the settlement proceeds) in wrongful death benefits split evenly between Mr. Pettit's daughters, Taylor Pettit and Kiley Igler.

- $88,156.34 (25 percent of the settlement proceeds) in survival benefits to the estate of Kenneth Pettit.[1]

(*Id.* ¶ 27 (citation modified)); (Full & Final Release, Pet. Ex. "A," Dkt. No. 66-1.)

II

Pennsylvania law requires court approval of proposed settlements of survival actions brought by an estate. 20 Pa. Stat. & Cons. Stat. Ann. § 3323(b). Doing so "protect[s] the estate, as well as the creditors and beneficiaries thereof." *Moore v. Gates*, 580 A.2d 1138, 1141 (Pa. Super. Ct. 1990). If the parties settle a wrongful death

---

[1] Taylor Pettit requests the Court award her $88,156.34 as administrator of Kenneth Pettit's estate. (Pet. ¶ 27.) But a survival claim is settled "on behalf of a decedent's estate," not the estate's administrator. *See Moore*, 580 A.2d at 1141; *Est. of Spence v. Yeadon Borough*, No. 24-1530, 2025 WL 834489, at *1 (E.D. Pa. Mar. 17, 2025) (awarding survival benefits to the decedent's estate).

2

and survival action for a single amount, the Court "must approve the apportionment of the amount allotted to the survival claims." *In re Est. of Merryman*, 669 A.2d 1059, 1060 n.1 (Pa. Commw. Ct. 1995). Section 3323 also allows for the approval of any "agreement for the payment of counsel fees and other proper expenses." 20 Pa. Stat. & Cons. Stat. Ann. § 3323(b)(1).

To approve a settlement for a survival action, the Court must determine: (1) "the adequacy of the proposed settlement amount," (2) "the reasonableness of the proposed apportionment of the settlement amount between the wrongful death and survival action claims," and (3) "the reasonableness of the attorneys' fees and costs requested." *Boykin v. Platinum Healthcare Grp., LLC*, No. 22-2939, 2024 WL 387638, at *3 (E.D. Pa. Jan. 31, 2024).

A

When determining the "fair value" of a lawsuit, the Court typically gives "considerable weight" to the judgment of counsel and the parties. *King v. Nat'l R.R. Passenger Corp.*, No. 23-3883, 2025 WL 1257254, at *1 (E.D. Pa. May 1, 2025) (citation omitted). The adequacy of a proposed settlement turns on "the strengths and weaknesses of the particular case, including whether the plaintiffs face any issues of proof that could hamstring their efforts to establish liability." *Id.*

Mr. Pettit's counsel negotiated the $700,000 gross settlement with experienced defense counsel after nearly three years of litigation. (Pet. ¶¶ 7–12.) Counsel determined that amount was "fair and reasonable" because Kenneth Pettit had a "history of suicidal ideations and attempts" and was previously incarcerated at Chester County Prison. (*Id.* ¶ 16.) Defendants "strongly contested all elements of Petitioner's

3

claims," (*id.* ¶ 10), which included motions for summary judgment, (PrimeCare Defs.' Mot. Summ. J., Dkt. No. 29); (Chester Cnty. Defs.' Mot. Summ. J., Dkt. No. 31.)  The parties settled a few weeks after oral argument on the motions.  (Pet. ¶ 18); (Dkt. No. 56.)  Because the parties and their counsel are "closer to the case and have a better handle on the risks and upsides of the litigation," *Carter v. Wellpath LLC*, No. 22-cv-01050, 2023 WL 6323095, at *1 (E.D. Pa. Sep. 28, 2023), the Court credits their assessment of the case and finds the $700,000 proposed settlement adequate.

B

Ms. Pettit seeks to allocate 75 percent of the settlement proceeds to the wrongful death claim and 25 percent to the survival action.  (Pet. ¶ 27.)  Pennsylvania policy favors wrongful death beneficiaries over estate beneficiaries, and courts have approved settlements allocating large percentages to the wrongful death action over the survival action.  *See Romano v. United States*, No. 20-1852, 2020 WL 7364453, at *4 (E.D. Pa. Dec. 15, 2020); *see also Tamasy v. Yough Sch. Dist.*, No. 18-01236, 2019 WL 5864893, at *2 (W.D. Pa. Nov. 8, 2019). ("[W]hile scrutiny is required, there is nothing inherently suspect or improper about a settlement allocation favoring wrongful death beneficiaries.").

Under Pennsylvania's Wrongful Death Act, damages "are compensation to individual members of the decedent's family for the pecuniary loss sustained by the death of the decedent." *Nunez Bravo v. City of Philadelphia*, No. 22-5190, 2024 WL 4582877, at *2 (E.D. Pa. Oct. 25, 2024) (citing *Tulewicz v. Se. Pa. Transp. Auth.*, 606 A.2d 427 (Pa. 1992)).  Wrongful death damages include "contributions the decedent would have made for their shelter, food, clothing, medical care, education,

entertainment, gifts and recreation" and the "value of the services, society, and comfort" they would have received. *Id.* (citations omitted). By contrast, damages for a survival action "compensate the decedent's estate for losses from the tort" and address the "decedent's pain and suffering, loss of gross earning power from the date of injury until death, and probable earning during his life expectancy minus the probable cost of maintaining himself and wrongful death damages." *Id.* When a decedent dies intestate, survival action proceeds are divided among the decedent's heirs. *Id.*

Here, damages for the survival action are minimal. Kenneth Pettit "lacked a notable work history and higher education," (Pet. ¶ 16), and likely lost consciousness within minutes of hanging himself, *see* (*id.* ¶ 24); *see also Nunez Bravo*, 2024 WL 4582877, at *2 (finding that survival damages from suicide were minimal but still "deserving of some portion of the settlement"). On the other hand, damages for the wrongful death action are considerable. Although Kenneth Pettit did not have much to offer in terms of material benefits, (Pet. ¶ 16), his family continues to suffer from emotional distress related to his suicide. Taylor Pettit testified her father "was always my best friend" and "not having him to lean on and talk to has been hard." (*Id.* ¶ 24.) Mr. Pettit also had "a lot of love" for his other daughter, Kiley Igler, who "got married without her dad around to walk her down the aisle." (*Id.*) Given Pennsylvania's preference for wrongful death beneficiaries, the distribution of 75 percent of the settlement proceeds to Ms. Pettit and Igler are reasonable. *Nunez Bravo*, 2024 WL 4582877, at *2 (distributing 80 percent of settlement proceeds to wrongful death beneficiaries).

C

Ms. Pettit requests 40 percent of the gross settlement, or $280,000, in attorneys' fees to Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck P.C.  (Pet. ¶¶ 18, 27); (Contingency Fee Agreement, Pet. Ex. "H," Dkt. No. 66-8.)  "[C]ourts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable parties."  *Ryan v. Butera, Beausang, Cohen & Brennan*, 193 F.3d 210, 215 (3d Cir. 1999) (citation omitted).  Still, the Court must "independently review" the settlement's proposed distribution to counsel.  *See King*, 2025 WL 1257254, at *2.

In doing so, Pennsylvania courts consider the "the rate of professional compensation usual at the time and place" for the kind of case.  *In re Thompson's Est.*, 232 A.2d 625, 630 (Pa. 1967).  If the parties seek a departure from the ordinary rate, courts consider:

> [T]he amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*In re LaRocca's Est.*, 246 A.2d 339, 546 (Pa. 1968).

For wrongful death and survival actions, courts have approved attorneys' fee awards of up to 40 percent of the settlement proceeds, particularly where they reflect a previously agreed-upon contingency fee arrangement.  *See, e.g., Est. of Spence v. Yeadon Borough*, No. 24-1530, 2025 WL 834489, at *4–5 (E.D. Pa. Mar. 17, 2025); *Boykin*, 2024 WL 387638, at *7; *Salas v. Goldenberg*, No. 22-2179, 2023 WL 8832422, at

\*2 (E.D. Pa. Dec. 20, 2023); *Hammonds v. Luzerne County*, 19-2199, 2020 WL 5517496, at \*2 (M.D. Pa. Dept. 14, 2020).

Even so, the *LaRocca* factors support the fee award. Counsel has worked on the case for the past three years, which included "intensive and extensive" "[i]nvestigation, preparation, and litigation." *See* (Pet. ¶¶ 7–10). The case proceeded to discovery, and counsel reviewed prison and medical records, retained and consulted experts in the fields of psychiatry, nursing, jail operations, and forensic pathology, and took eleven depositions. (*Id.* ¶¶ 7, 9–10.) The litigation involved conditions in Chester County Prison, (*id.* ¶ 6), which "are clearly matters of great public importance," *see Houchins v. KQED, Inc.*, 438 U.S. 1, 8 (1978). And Ms. Pettit's counsel has experience litigating these types of claims. *See, e.g.*, *Bingham v. Lancaster County*, 709 F. Supp. 176 (E.D. Pa. 2024); *Glantz v. Montgomery County*, No. 22-3868, 2024 WL 346011 (E.D. Pa. July 14, 2024); *Sparkman v. Potter County*, No. 24-CV-1338, 2025 WL 260314 (M.D. Pa. Jan. 21, 2025). Taken together, the requested fee award of $280,000, or 40 percent of the settlement amount, is fair and reasonable. *See Nunez Bravo*, 2024 WL 4582877, at \*3 (approving 40 percent contingency fee in a survival and wrongful death action involving suicide).

Finally, the requested $67,374.66 for reimbursement of counsel's costs—which includes costs related to the investigation, court filings, medical records, depositions, and expert witnesses, *see* (Pet. ¶ 17); (Pet. Ex. "G" at 2, Dkt. No. 66-7)—is reasonable. *Cf. Boykin*, 2024 WL 387638, at \*7 (noting the recoverable costs were part of the fee agreement and appropriate given the course of representation).

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
Gerald J. Pappert, J.